CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2020 APR 22 AM 8: 15
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BENNIE L. COLLINS, Institutional ID No. 1316764, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 5:19-CV-219-BQ |
| TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, *et al.*, | § § § § | |
| Defendants. | § § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Bennie L. Collins filed this action on October 15, 2019. Collins alleges Defendants violated his constitutional rights, and he seeks monetary damages as a result. Compl. 3–5, ECF No. 1;[1] Questionnaire 10, ECF No. 12.

On October 23, 2019, the United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 7. The undersigned thereafter reviewed Collins's Complaint and ordered Collins to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976).[2]

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following Report and Recommendation to the United States District Judge.

---

[1] Page citations to Collins's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[2] Due to the nature of Collins's allegations, the Court did not request authenticated records from any Defendants in this matter, concluding that Defendants could produce few, if any, records instructive as to Collins's claims because they relate to a Child Protective Services case.

1

## I.   <u>Standard of Review</u>

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such

plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. **Background**

In his Complaint Collins alleges that Defendants associated with a Texas Department of Family and Protective Services (DFPS) investigation by its Child Protective Services (CPS) division violated his constitutional rights. Compl. 3–5. Collins names eight Defendants: (1) Texas DFPS; (2) Judge Kara Darnell; (3) April Foster, CPS Supervisor; (4) Emily Turner, CPS Specialist; (5) Amanda Carter, attorney (representing Collins's children); (6) Matthew Harris Law, PLLC; (7) Deidre Ward, attorney for DFPS; and (8) DFPS worker "Bruno." *Id.* at 3–4. Collins generically accuses all Defendants, save Judge Darnell, of "Conspiracy/Slander/Falsification of Gov. Documents/Perjury" and "False Testimony." *Id.*; *see* Questionnaire 9–10. As to Judge Darnell, Collins alleges that she "[c]onspired with all other Defendants to cause [Collins] harm" in that she "allow[ed] other Defendants to violate [Collins's] Const[itutional] rights." Compl. 3–4; *see* Questionnaire 9.

Through his questionnaire responses, Collins states that his claims arise from him being named as a party to an ongoing CPS case on March 17, 2019, from which he was later dismissed. Questionnaire 1–2. While Collins more fully articulates the basis of his claims against each Defendant in his questionnaire responses, they nonetheless remain extraordinarily vague and conclusory. He alleges that DFPS violated his rights because it "employed the Defendants that harmed [him], as well as the attorneys." *Id.* at 2. As to Judge Darnell, Collins avers that she violated his rights by allowing him to be added to the CPS case. *Id.* at 3. Collins asserts that April Foster, CPS Supervisor, "conspir[ed] with the verbal assaults from other (CPS) workers thus agreeing with their malice [sic] intents to redicule [sic] [Collins] and maliciously add [Collins] to

3

an already existing (CPS) case" and "ridicul[ed] and slander[ed] [Collins's] name & character." *Id.* at 4. According to Collins, Emily Turner, CPS Specialist, "[c]onspired with other Defendants by way of slander, false testimony, perjurous [sic] testimony. Lied in court. Added [Collins] to this case that [he] shouldn't have been involved in from day one." *Id.* at 5. As to attorney Amanda Carter, Collins claims she "conspired with TDFPS (CPS) state officials and attorneys employeed [sic] by the TDFPS to violate [his] rights that are protected by the U.S. Const. Also signing off on falsified document [sic]." *Id.* at 6. Collins states that Matthew Harris Law, PLLC, violated his rights because it employed Defendant Carter. *Id.* at 7. Collins further alleges that Deidre Ward, an attorney for DFPS, violated his rights by "signing off on falsified documents, conspiring with other Defendant[s] to cause [Collins] harm." *Id.* at 8. Collins also avers that DFPS worker Bruno "accused [him] of several alligations [sic] concerning [his child] that were not true 'You are indangering[sic] the child' by way of sleeping with her." *Id.* at 9. Finally, Collins claims that on a few occasions someone "called [him] a child-molester" and "pedifile [sic];" however, he never precisely identifies who did so or to whom such statements were directed. *Id.* at 2, 4, 5. The only clue provided as to the speaker's identity is that they were "employee's [sic] for the TDFPS (CPS) Division," and that Collins says the statements were made "during [an] alleged family meeting." *Id.* at 4. Collins asks the Court to "have [the CPS] case erased from [his] record and award damages." *Id.* at 10.

## III. <u>Discussion</u>

The undersigned recommends that the District Court dismiss Collins's Complaint for myriad reasons. First, many of the Defendants are immune from suit. Second, as to the remaining claims and Defendants, Collins does not state a cognizable § 1983 claim because his allegations are excessively broad and conclusory. Prior to examining these claims, the undersigned notes that

4

Collins also accuses Defendants of violating his rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments. *See* ECF No. 12. The undersigned finds that Collins's Complaint and questionnaire responses provide no arguable basis in law or fact for concluding that Defendants violated his Fourth, Sixth, or Eighth Amendment rights.[3] As such, the following analysis focuses on his claimed Fourteenth Amendment violations.

### A. Defendants DFPS, Judge Darnell, and Deidre Ward are immune from suit.

First, DFPS is a state agency and therefore possesses sovereign immunity from suit under the Eleventh Amendment. *Rodgers v. Tex. Dep't of Family Servs.*, Civil Action No. 4:19-CV-00296, 2019 WL 4013887, at *2 (S.D. Tex. Aug. 26, 2019) (citing *Thomas v. Tex. Dep't of Family & Protective Servs.*, 427 F. App'x 309, 312–13 (5th Cir. 2011)) (holding that DFPS has sovereign immunity under the Eleventh Amendment for suits against it). Second, absolute judicial immunity shields Judge Darnell from Collins's claims herein. *Mata v. Robinson*, 2:16-CV-256-Z, 2020 WL 247513, at *2 (N.D. Tex. Jan. 16, 2020) (quoting *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir. 1989)) ("Judges are absolutely immune from liability for damages for judicial acts 'that are not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.'"). Collins has not alleged facts supporting a finding that Judge Darnell lacked jurisdiction or acted in a non-judicial capacity in presiding over the CPS case at issue[4] or in her dealings, if any, with Collins. *See Mireles v. Waco*, 502 U.S. 9, 13 (1991) (stating that courts should "look to

---

[3] The Fourth Amendment protects a citizen's right "to be secure . . . against unreasonable searches and seizures," U.S. CONST. amend. IV, and nothing in Collins's pleadings demonstrates that he or his property were ever searched or seized, let alone that any such acts were unreasonable. The Sixth Amendment safeguards citizens' rights as they relate to criminal prosecutions, U.S. CONST. amend. VI, but Collins's claims do not arise from a criminal case. The Eighth Amendment protects citizens from "excessive bail," "excessive fines," and "cruel and unusual punishment," U.S. CONST. amend. VIII; however, Collins alleges no facts even remotely suggesting that these protections apply to his claims.

[4] The undersigned notes that Judge Darnell is an Associate Judge who presides over the Child Protection Court in Lubbock County, among others. *See* Lubbock County Texas, *Courts*, https://www.co.lubbock.tx.us/department/index.php?structureid=206 (last visited Apr. 15, 2020).

5

the particular act's relation to a general function normally performed by a judge," and that "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself'").

Finally, Deidre Ward, an Assistant Lubbock County Attorney in the Civil Division, is entitled to prosecutorial immunity.[5] Prosecutors enjoy absolute immunity from suits brought under § 1983 so long as the claims arise from the prosecutor's function as an officer of the court. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009); *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (noting that prosecutorial immunity applies to "all actions which occur in the course of [the prosecutor's] role as an advocate for the State" (internal quotation marks omitted) (alteration in original)). Though neither the Supreme Court nor Fifth Circuit have addressed whether prosecutorial immunity applies to actions taken in civil cases, such as a CPS case, multiple circuits have concluded that it does, as have Texas district courts. *See Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019) (noting that both city attorneys and prosecutors who pursue civil actions are covered by absolute prosecutorial immunity); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (citing *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995) and *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991)) (holding that prosecutorial immunity applies to actions taken in preparing and filing public nuisance and civil forfeiture complaints); *Reed v. Gonzalez*, No. Civ. A 499CV603P, 2001 WL 640788, at *4 (N.D. Tex. June 8, 2011) (holding that former state attorney general and assistant attorneys general possessed absolute prosecutorial immunity for actions taken while representing state in civil case). Indeed, one district court has explicitly found that absolute prosecutorial immunity applies to attorneys representing

---

[5] Collins's Complaint alleges that Ward is an "Attorney for [DFPS]." Compl. 4. This could mean Ward (1) simply represents DFPS as its counsel or (2) is an attorney actually employed by DFPS. Information publicly available indicates that Ward is employed by Lubbock County and therefore protected by absolute immunity. *See* Lubbock County Texas, *CDA Staff*, https://www.co.lubbock.tx.us/egov/apps/document/center.egov?view=item;id=1344 (last visited Apr. 14, 2020). Even if Ward is employed directly by DFPS, however, existing law supports a finding that prosecutorial immunity shields her actions as a state prosecutorial actor for the reasons stated herein.

CPS. *See Shipula v. Tex. Dep't of Family Protective Servs.*, Civil Action No. H-10-3688, 2011 WL 1882521, at *14, *18–19 (S.D. Tex. May 17, 2011).

Collins claims that Ward violated his rights "[d]uring the first court proceedings when the Defendants all agreed to add [him] to the preexisting case" and "sign[ed] off on falsified documents, conspir[ed] with other Defendant[s] to cause [him] harm." Questionnaire 7–8. Given these assertions, it is clear that Ward was acting in her capacity as a representative of the State when she took the alleged wrongful actions, and Collins pleads no facts to the contrary. "Moreover a prosecutor cannot be liable for [an] alleged conspiracy where he is otherwise entitled to absolute immunity for his underlying actions." *Shipula*, 2011 WL 1882521, at *14 (citing *Mobray v. Cameron Cty.*, 274 F.3d 269, 277 (5th Cir. 2001)). As such, the District Court should dismiss Collins's claims against DFPS, Judge Darnell, and Ward based on their immunity from such actions.

### B. Collins's claims against the remaining Defendants should be dismissed for failure to state a claim upon which relief can be granted.

Collins's claims against Defendants April Foster, Emily Turner, Amanda Carter, Matthew Harris Law, PLLC, and DFPS worker Bruno all follow a similar theme: (1) Collins's Complaint generically accuses each of them of "Conspiracy/Slander/Falsification of Gov. Documents/Perjury" and "False Testimony" (Compl. 3–4); and (2) Collins's questionnaire responses reiterate these same assertions with slightly more detail. The questionnaire responses are best summarized as claiming that each Defendant conspired with the others to add Collins to the ongoing CPS case, made false allegations against him, submitted false documentation in support of those allegations, and slandered him. *See* ECF No. 12. Construing these assertions broadly, they appear to raise claims for (1) conspiracy to deprive Collins of his rights, (2) due process violations pertaining to his being "added" to an ongoing CPS case based on allegedly false

information, and (3) defamation. The undersigned will address each in turn, noting that the core of its analysis concerns the vague and conclusory allegations Collins puts forth.

> *1. Collins's claims alleging conspiracy should be dismissed because they are not adequately specific to support a claim under § 1983.*

"To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Id.*; *see Young v. Biggers*, 938 F.2d 565, 566 (5th Cir. 1991) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987)) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient."); *Chadman v. Quisenberry*, CIVIL ACTION NO. 4:17-CV-700-Y, 2019 WL 3530422, at *6 (N.D. Tex. Aug. 2, 2019) ("Conspiracy claims under § 1983 require that the claimant relate specific facts."). "Therefore, to establish his conspiracy claim, [Collins] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." *Montgomery*, 759 F. App'x at 314.

Collins's allegations are insufficient to survive screening. Throughout his questionnaire responses, he does little more than assert that Defendants "conspired" to do various things, such as "fabricate documents," provide "false testimony," "slander" him, "add [him] to the [CPS] case," or simply to "cause [him] harm." *See* Questionnaire 4–6, 8. At no point does Collins allege any facts that would tend to show that an agreement existed between Defendants to act in concert and deprive him of his rights, or that an actual deprivation occurred. As such, the District Court should dismiss all of Collins's claims of conspiracy as to all remaining Defendants. *Doss v. City of*

*DeSoto*, Case No. 3:19-cv-00408-S-BT, 2020 WL 1216716, at *3 (N.D. Tex. Feb. 18, 2020), *R. & R. adopted by* 2020 WL 1187174 (N.D. Tex. Mar. 11, 2020) (recommending dismissal of plaintiff's conspiracy claim because he merely alleged that defendants "'conspired' to ruin his life," which was not sufficient to state a claim); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (dismissing conspiracy claim because plaintiff did not did not "set forth specific allegations that [defendants] agreed to commit an illegal act" (internal quotation marks omitted)); *Simmons v. Jackson*, Case No. 3:15-cv-1700-S-BT, 2018 WL 4574975, at *4 (N.D. Tex. Sept. 6, 2018), *R. & R. adopted by* 2018 WL 4568802 (N.D. Tex. Sept. 24, 2018) (recommending dismissal of conspiracy claim because plaintiff's allegations were conclusory).

  *2. Collins's claims against Amanda Carter and Matthew Harris Law, PLLC, should be dismissed because Collins does not allege that they were state actors.*

Collins brings claims against both Amanda Carter and Matthew Harris Law, PLLC, alleging that Carter "agreed with the CPS worker to add [him] to the case thus conspiring with the Defendants to do so," and that Matthew Harris Law violated his rights through the actions of its employee, Carter. Questionnaire 6–7. Collins does not allege that either Carter or Matthew Harris Law were state actors, though he does identify Carter as the lawyer for the "Collins Children." Compl. 3. As such, the undersigned construes Collins's claim as alleging that Carter was acting as a guardian or attorney ad litem and representing the interests of the children involved in the CPS case.

"To pursue a claim under § 1983, a plaintiff must (1) allege a violation of *rights* secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008) (internal quotation marks and brackets omitted). Courts have held that, although guardians and attorneys ad litem are appointed by the state to represent the

interests of an individual, they *do not* act under color of state law because their loyalties are to their client, not the state. *See Hall v. Dixon*, Civil Action No. H–09–2611, 2010 WL 3909515, at *40 (S.D. Tex. Sept. 30, 2010) (collecting cases holding that guardians and attorneys ad litem are not state actors). As such, absent some specific allegation tending to show that Carter was, in fact, a state actor, no claim may proceed against her under § 1983. Collins's claim against Matthew Harris Law is premised solely on its employment of Carter. As such, it is apparent that if Carter is not a state actor, then neither is her employer. The District Court should therefore dismiss all claims against Carter and Matthew Harris Law.[6] *See Gidney v. Little Flower Adoptions*, No. 3:06-CV-1134-P ECF, 2006 WL 2482948, at *2 (N.D. Tex. Aug. 29, 2006) (dismissing claims against private attorney representing adoption agency and guardian ad litem because they did not act under color of state law).

### 3. Collins's claims alleging that Defendants illegally "added" him to an ongoing CPS case should be dismissed because the allegations supporting them are vague and conclusory.

Giving the Complaint and questionnaire responses a very liberal construction, it appears Collins claims that Defendants illegally "added" him to an ongoing CPS case, i.e., by providing fabricated allegations and supporting documents, from which he was eventually dismissed. Compl. 5; Questionnaire 1–2, 4–7. Assuming, without deciding, that individuals have a due process right to not have the state pursue civil actions against them based on known false and/or fabricated evidence,[7] Collins nonetheless fails to state an actionable § 1983 claim.

---

[6] Courts have recognized action under color of state law where private actors conspire with state officials to deprive individuals of their rights. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, as discussed above, Collins's allegations regarding any conspiracy between the Defendants fail because they are vague and conclusory. As such, no basis exists for concluding that Carter or Matthew Harris Law were state actors due to an agreement between themselves and state officials.

[7] *See, e.g., Cole v. Carson*, 802 F.3d 752, 772–73 (5th Cir. 2015), *vacated and remanded by* 137 S. Ct. 497 (2016), *holding partially reinstated by* 905 F.3d 334 (5th Cir. 2018), *reinstatement recognized by* 935 F.3d 444 (5th Cir.) (en banc) (concluding that due process rights are violated where police "deliberately fabricate evidence and use it to frame

Vague and non-specific allegations of wrongdoing are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"). In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim*, 836 F.3d at 469. And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor*, 296 F.3d at 378).

Collins's allegations, even when given a liberal reading, do not establish a right to relief above a speculative level. First, in reading Collins's questionnaire responses, only two Defendants (DFPS and Turner) are alleged to have illegally "added" him to the CPS case, while he claims the others merely conspired to do so. *See* Questionnaire 1 (indicating that an attorney "advised [DFPS] that it could not add me to an existing case without violating my rights"), 4 (asserting that Foster "agree[d] with their malice [sic] intents to redicule [sic] me and malicious add me illegally to an already existing (CPS) case"), 5 (alleging that Turner "[a]ddded to me to this case that I shouldn't have been involved in from day one"), 6 (stating that Carter "agreed with the CPS worker to add me to the case thus conspiring with the Defendants to do so"), 7 (averring that Ward "[c]onspired

---

and bring false charges against a person" because such behavior "shocks the conscience" and "offends the most strongly held values of our nation").

with other Defendants to harm Plaintiff, thus signing off on documents"). As DFPS is immune from suit, the only remaining Defendant is Turner.

Collins's questionnaire responses as to Turner indicate that she "conspired to fabricate documents, tell false testimony in court hearing, signs [sic] off on illegal documents," and that she violated his rights "during the first day she walked into [Collins's] home, and during every meeting that an attorney wasn't present and [Collins's] rights not explained to [him]." *Id.* at 5. Collins further states that Turner "[c]onspired with other Defendants by way of slander, false testimony, perjurous [sic] testimony. Lied in court. Added [Collins] to this case that [he] shouldn't have been involved in from day one." *Id.* Finally, in response to the Court's question as to how these alleged violations harmed him, Collins claimed that "[e]veryone turned their backs on [him] (family & friends), ridicule/tormented/humiliation, embarrassment. The verbal abusive and hazardous treatment, the pain and suffering mental physical, emotionally, called a child-molester/pedifile. Conspired to maliciously harm [Collins] with other Defendants." *Id.*

These allegations lack factual specificity and are too vague to survive screening. At no point does Collins articulate in any detail the actions Turner took that violated his rights. Instead, he generically asserts that she did things such as "sign[] off on illegal documents," provide "false" and "perjurous [sic] testimony," lie in court, and "add" Collins to an ongoing CPS case. *Id.* Such vague and conclusory statements do not warrant a presumption of truth nor do they state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). As such, the District Court should dismiss Collins's claim that Defendant Turner illegally "added" him to an ongoing CPS case. *See Reagan v. Burns*, Civil Action No. 3:16-CV-2590-G-BH, 2019 WL

6733023, at *16 (N.D. Tex. Oct. 30, 2019), *R. & R. adopted by* 2019 WL 6729085 (N.D. Tex. Oct. 30, 2019) (recommending dismissal of prisoner's diet-based claims as conclusory and therefore insufficient to state a claim); *Wade v. Travis Middle Sch.*, No. 3:11-CV-0276-G (BK), 2011 WL 3880481, at *4 (N.D. Tex. Aug. 9, 2011), *R. & R. adopted by* 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011) (recommending dismissal of § 1983 claims alleging discrimination because they were vague and conclusory).

> 4. *Collins's defamation claims should be dismissed because they are vague, conclusory, and do not sufficiently identify* who *made the allegedly defamatory statements.*

Collins's questionnaire responses contain information concerning alleged defamatory statements made by only four specifically identified Defendants. *See* Questionnaire 2 (stating that the subject matter of the CPS case was "that I was a child molester"), 4 (claiming that Foster violated his rights "during the alleged family meeting when the employee's [sic] for [DFPS] (CPS) Division called me a child-molester" and further stating in response to the Court's question regarding harm that someone "called [Collins] a child molester"), 5 (indicating, in response to Court's question regarding how Turner's alleged actions harmed him, that someone "called [Collins] a child molester/pedifile [sic]"), 9 (averring that Bruno "accused me of several alligations [sic] concerning [Collins's child] that were not true 'You are indangering [sic] the child' by way of sleeping with her").

To begin, the Supreme Court has held that defamatory statements by government officials may be actionable under § 1983 if they infringe on an interest protected by law; however, mere reputational harm is not enough. *Paul v. Davis*, 424 U.S. 693, 710–12 (1976) (holding that plaintiff did not state a claim for § 1983 violation on theory of defamation where two chiefs of police issued flyers identifying plaintiff as a shoplifter even though he had not yet been convicted and charge was later dismissed). "The Fifth Circuit has consistently held that reputational injuries brought as

§ 1983 claims require a showing of 'stigma plus an infringement of some other interest.'" *Wilkerson v. Lowndes Cty.*, Civil No. 1:15-cv-00173-GHD-DAS, 2018 WL 1309854, *9 (N.D. Miss. Mar. 13, 2018) (quoting *San Jacinto Sav. & Loan v. Kacal* 928 F.2d 697, 701 (5th Cir. 1991)); *see Singh v. Wal-Mart Stores, Inc.*, 1:17-CV-1120-RP, 2019 WL 1324135, *4 (W.D. Tex. Mar. 25, 2019). "To fulfill the stigma aspect of the equation, a claimant must prove that the stigma was caused by a false communication." *San Jacinto*, 928 F.2d at 701 (internal quotation marks omitted). The Fifth Circuit "has found sufficient stigma only in concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of the claimant." *Id.* (internal quotation marks omitted). "To establish the 'infringement' portion of the 'stigma plus infringement' test, a claimant must establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated.'" *Id.* at 701–02 (citing *Paul*, 424 U.S. at 710–11 & n.5).

Importantly, Collins never explicitly states *who* allegedly called him a child molester or pedophile, except to say that they were DFPS employees.[8] Questionnaire 4. This is, by itself, fatal to Collins's claims. *See Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) (stating that the first element of defamation in Texas is that "the *defendant* published a false statement" (emphasis added)). Although Collins's questionnaire responses as to Foster and Turner indicate that someone called him a child molester or pedophile, Collins alleges no facts sufficient to conclude or infer that it was Foster or Turner who made those statements. Questionnaire 4–5. As to Foster, Collins initially claims that she was present "the day during the alleged family

---

[8] The undersigned does not believe it necessary to expend significant time explaining that Collins's allegations regarding fabricated or false documentation and lying in court are too conclusory to state a claim as they do not even indicate what defamatory statements might have been involved. Instead, the analysis herein focuses on the references Collins makes to being called a child molester and Bruno's alleged statement that Collins was endangering his child.

meeting when the *employee's* [sic] for [DFPS] (CPS) Division called [him] a child-molester." *Id.* at 4 (emphasis added). In a later response concerning the harm he claimed to have suffered, Collins listed, among numerous other things, "[being] called a child-molester/pedifile [sic]." *Id.* Taking Collins's allegations at face value, he does not assert that Foster called him a child molester. As such, any claim against her for defamation should be dismissed.

In regard to Turner, Collins states (while listing a variety of alleged mental, emotional, social, and physical harms) that he also experienced being "called a child molester/pedifile [sic]." *Id.* at 5. Again, the vagueness of his allegations precludes a finding that he has adequately stated a claim for relief. It is not clear from this response whether Turner, another DFPS employee, a family member or acquaintance, or some other unknown person, allegedly called Collins a child molester. Given Collins's earlier generic reference to an unnamed DFPS employee (rather than Turner) and his later attribution of a direct quotation to Defendant Bruno, the undersigned sees no basis for concluding that Collins alleges Turner was the publisher of any statements asserting that Collins is a child molester. *See id.* at 4, 9. The District Court should therefore dismiss any claim against Turner for defamation.

Finally, the undersigned turns to the claims against DFPS worker Bruno, who Collins claims "accused [him] of several alligations [sic] concerning [his child] that were not true 'You are indangering [sic] the child' by way of sleeping with her." *Id.* at 9. Collins also asserts that Bruno "[m]ade false alligations [sic] against [him]," causing Collins to suffer "[e]mbarrasment [sic], humiliation (mental anguish) abusive and hazardous treatment (attack by other state officials) social standings." *Id.* at 8–9. These claims are the least vague of any, in that they directly attribute a statement to Bruno, yet they still do not state a claim for defamation under § 1983.

15

Collins alleges no facts supporting a claim that Bruno accused him of being a child molester, and liberal construction of his allegations requires no different result. Collins used that term multiple times in earlier questionnaire responses but never in reference to statements allegedly made by Bruno. *See id.* at 4–5, 8–9. If he intended to make such a claim specifically against Bruno, he had ample opportunity to do so. As to the child endangerment statement, Collins provides no context within which the Court can adequately evaluate the claim. *Id.* at 9. More significantly, Collins pleads no facts demonstrating that this statement was published to anyone beyond Collins, as the quotation he provides in his questionnaire response is clearly directed at *him. Id.* Thus, such a limited allegation cannot support a claim for defamation. *See Warren*, 932 F.3d at 384 (indicating that Texas law requires false statements to be "communicated, either orally or in writing, to some third person . . ."). As such, dismissal of Collins's claim against Bruno would be entirely appropriate on this basis alone.

But even assuming that Bruno *did* publish the statement to a third person, Collins's claim nonetheless fails the "stigma plus infringement" test for defamation claims under § 1983. As discussed above, "a claimant must establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by" the Constitution. *San Jacinto*, 928 F.2d at 701–02. Collins does not specifically allege the infringement of any legally protected interest arising from Bruno's purported statement that he was endangering his child. In enumerating the harms he claims to have suffered because of Bruno's alleged actions, Collins lists "embarrasment [sic], humilitation [sic] (mental anguish) abusive and hazardous treatment (attack by other state officials) social standings." Questionnaire 9. At best, Collins has claimed that he experienced stigmatizing harms, but not the "removal or significant alteration of" a protected interest, and he therefore falls short of fulfilling the "stigma

plus infringement" requirement.[9] For the foregoing reasons Collins has not stated a viable § 1983 defamation claim against Bruno. *See Lee v. Brownfield Police Dep't*, CIVIL ACTION NO. 5:17-CV-040-C, 2017 WL 8790966, at *4 (N.D. Tex. Apr. 21, 2017) (dismissing defamation claims because plaintiff's only alleged harm was to his reputation and because he failed to identify officers who allegedly defamed him); *Bell v. Stevenson*, Civil Action No. 3:06-CV-1041-G, 2006 WL 1983221, at *2 (N.D. Tex. July 17, 2006) (dismissing prisoner's defamation claim under § 1983 for, among other reasons, the failure to allege harm beyond that to his reputation); *Escamilla v. Dall. Police Dep't*, No. 3-01-CV-1159-G, 2001 WL 1338302, at *3 (N.D. Tex. Oct. 18, 2001) (dismissing § 1983 defamation claim because only harm was to reputation).

## IV. Conclusion

As required, the undersigned has liberally construed Collins's Complaint and questionnaire responses. However, the Court cannot redraft Collins's allegations or attempt to remedy his pleading deficiencies in conducting its statutorily mandated screening process. Collins's vague and factually unsupported allegations fail to satisfy the minimal requirements for allowing viable § 1983 claims to proceed. The District Court should therefore dismiss Collins's Complaint in its entirety as to all Defendants.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that Collins's Complaint and all claims therein be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief can be granted.

---

[9] To the extent Collins claims Bruno made "false alligations [sic]" that claim is too vague to support any claim of defamation, as it does not even identify what false allegations Bruno purportedly made.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April 22, 2020

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE